# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JOHN H. WHITE,

                              Plaintiff,

      -v.-                                         9:15-CV-88 (TJM/ATB)

ERIC P. VELIE, et al.,

                              Defendants.

JOHN H. WHITE, Plaintiff Pro Se
ORIANA CARRA, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge. In this civil rights complaint, plaintiff alleges that defendant Velie intentionally and forcefully closed the "manual opening" in the door of plaintiff's cell on his left hand and arm, and plaintiff was denied proper medical care for the resulting injuries.[1] (Complaint ("Compl.")) Plaintiff seeks injunctive, declaratory, and substantial monetary relief. (Compl. at CM/ECF p.18).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 34). Plaintiff has filed a response in

---

[1] The complaint also contained Eighth Amendment claims of failure to protect, unconstitutional conditions of confinement, and violations of due process. (Compl.) (generally). After initial review of the complaint, on March 25, 2015, Senior Judge McAvoy dismissed these additional claims. (Dkt. No. 4). As a result of that order, defendants Gravlin, Hoag, and Cook were terminated from the action. (*Id.* at 15). Plaintiff's Eighth Amendment excessive force claim survived as against defendant Velie, and his denial of medical care claims remain as against defendants Brue, Bergeron, Atkinson, Wilson, Waterson, Lordi, Marlow, Smith, Uhler, Danforth, Bell, McIntosh, and Moore. (*Id.* at 14).

opposition to the motion, defendants have filed a reply, and plaintiff filed a sur-reply. (Dkt. Nos. 44, 48, 52). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

**I.      Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities,

2

and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II. Facts

The relevant facts in this case were outlined in Senior Judge McAvoy's decision on initial review of the complaint (Dkt. No. 4) and will be recited herein for clarity and continuity. Plaintiff claims that on December 10, 2014, Corrections Officer ("CO")

Velie intentionally and forcefully closed the manual opening in the door of plaintiff's cell on plaintiff's left hand, wrist, and forearm. (Compl. at 2). Defendant Velie allegedly also held the opening down, preventing plaintiff from pulling his arm free. (*Id.*) Plaintiff's hand, wrist, and forearm were lacerated and bruised, and plaintiff states that he experienced extreme pain, swelling and numbness. (*Id.*)

After the plaintiff was permitted to pull his arm back into the cell, and the opening was secured, defendant Velie called Area Sergeant Moore, who arrived at plaintiff's cell accompanied by Nurse Atkinson. (*Id.*) Plaintiff alleges that Nurse Atkinson stood outside plaintiff's cell in order to determine whether he had suffered any injuries. (*Id.* at 3). Plaintiff refused to undergo a medical evaluation in the infirmary because he had been "attacked by guards down there." (*Id.*) Plaintiff alleges that his request that defendants file an injury report, take photographs, and allow plaintiff to to be examined by a physician were denied by defendants Atkinson and Moore. (*Id.*)

Plaintiff claims that defendant Superintendent Uhler "[s]ubseqently . . . appeared at plaintiff's cell door . . . ." (*Id.* at 4). Plaintiff states that he told defendant Uhler about the incident, to which Uhler responded "every now & then you need a little pain, ya [sic] know." (*Id.*) Plaintiff then explained that he had received no medical attention and was denied the opportunity to sign an "injury form" or to have photographs taken of the injuries. (*Id.*) Plaintiff tried to show Uhler his arm, but Uhler "disregarded plaintiff by walking away from his cell," after making a comment about the lack of a

"video."[2] Plaintiff alleges that, later that day, defendant Velie told plaintiff that Velie would break plaintiff's arm if he went to the infirmary. (*Id.*)

Plaintiff states that on December 11, 2014, defendants Danforth, McIntosh, Bell, and Gravlin conducted "rounds" of plaintiff's housing unit. (Compl. at 4). Plaintiff showed these officers his injured arm and explained how he got the injuries. Plaintiff named the officer involved and alleged that the Sergeant and the Nurse improperly denied plaintiff medical care and "fraudulently" documented the incident. Plaintiff also explained why he did not wish to go to the infirmary, but defendant Danforth simply stated that "I don't know anything about assaults by guards in that area," and walked away from plaintiff's cell, "discontinuing the interview" and leaving with the rest of the officers. (*Id.*) Plaintiff alleges that his requests to Danforth, McIntosh, Bell, and Gravlin for medical care were ignored. (*Id.* at 5).

Plaintiff states that he made almost daily requests to report the injury and for medical care through the "sick-call" procedure at Upstate, but the requests were denied. (Compl. at 6). Plaintiff alleges that he wrote a letter to defendant Smith, who plaintiff identifies as the supervisor of medical personnel, but got no response. (*Id.* at 8). Plaintiff claims that he wrote a letter to defendant Superintendent Uhler, requesting "protective custody" from defendant Velie after Velie brought plaintiff an "empty breakfast meal tray" on December 15, 2014, but received no response to this request. (*Id.*)

---

[2] Plaintiff states that Uhler said: "if you didn't do anything wrong then no video exists." (Compl. at 4). Plaintiff may have left out parts of the alleged conversation.

Plaintiff claims that he met with Counselor Cook on December 24, 2014 and asked her to ensure that he received medical care for his injuries, but after he explained how he got the injuries, she told plaintiff that she would not get involved. (Compl. at 10). Plaintiff states that on December 26, 2014, on December 30, 2014, and again in January of 2015, he met with defendant Hoag.[3] (*Id.* at 11-12). Plaintiff states that he told Hoag about plaintiff's inability to obtain medical care. (*Id.* at 11). Although Hoag told plaintiff that he could not help him with the medical care issues, Hoag encouraged plaintiff to "file a grievance" or "write to Supervisor Danforth." (*Id.*) Plaintiff states that he was advised on January 16, 2015, that the misbehavior charges, relating to the December 10, 2014 incident with defendant Velie were dismissed, and his institutional record was expunged. (*Id.* at 12). Although the complaint also contains claims regarding plaintiff's fear of a new cell-mate, who was allegedly a member of a gang, the court need not discuss these allegations because plaintiff's claims in this regard have been dismissed.

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject

---

[3] It appears from the complaint that plaintiff was charged with some sort of misconduct in relation to the December 10 incident with defendant Velie, and defendant Hoag was assigned as the hearing officer. (*See* Compl. at 11-12).

6

matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The exhaustion requirement does not apply to former inmates who commence an action after their release from custody. *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999). However, the exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003). Dismissal is appropriate for failure to exhaust when a prisoner was incarcerated for "several months after the onset of the conditions that gave rise to his complaints and prior to his release." *Berry*, 366 F.3d at 88.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper"

exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* at § 701.8.

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[4] Based on these cases, the Second Circuit developed a

---

[4] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required

8

"three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Heyliger v. Gebler*, No. 14-4092-pr, __ F. App'x __, 2015 WL 5616288, at *1-2 (2d Cir. Sept. 25, 2015) (applying the *Hemphill* analysis without further discussion); *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or whether special circumstances excused exhaustion); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).[5] As discussed below,

---

when plaintiff brings both exhausted and unexhausted civil rights claims).

[5] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis

9

this court finds that plaintiff has not shown that the exhaustion requirement should be excused, and thus, plaintiff's case should be dismissed.

   B.   **Application**

Defendants argue that plaintiff failed to exhaust his administrative remedies. Defendants have filed the declaration of Jeffrey Hale, the Assistant Director of the Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP"). (Hale Decl., Dkt. No. 34-3). Mr. Hale is the custodian of records maintained by the CORC. (Hale Decl. ¶ 2). Mr. Hale states that claims such as those made by plaintiff in this action are "a proper subject for a grievance." (Hale Decl. ¶ 9). Mr. Hale has attached a computer print-out from the CORC database reflecting the results of a search of plaintiff's grievance appeals between February of 2009 and February of 2015. (Hale Decl. Ex. A). Although plaintiff filed "numerous other grievance appeals with [the] CORC," none of them concern the December 10, 2014 incident. (Hale Decl. ¶ 12 & Ex. A).

Defendants have also filed the declaration of Brandi Collyer, an Inmate Grievance Supervisor ("IGPS") at Upstate. (Collyer Decl., Dkt. No. 34-4). Ms. Collyer is one of the individuals responsible for keeping records of grievances filed by inmates at the facility level, and thus has access to those records. (Collyer Decl. ¶ 9). Ms. Collyer also states that claims such as those brought by plaintiff are the proper subjects for grievances. (Collyer Decl. ¶ 8). Ms. Collyer states that she searched the IGP files to

---

added). This statement implies that there are still exceptions that a court may consider.

determine if this plaintiff filed any grievance at Upstate relating to the December 10, 2014 incident. (Collyer Decl. ¶ 10). Although plaintiff filed 18 grievances between 2013 and 2015, "none of the grievances filed by plaintiff between 2013 and 2015 involves complaints of excessive force by staff at Upstate that occurred on or about December 10, 2014, and/or the denial of medical care related thereto." (Collyer Decl. ¶¶ 11-12).

Plaintiff does not dispute that he has not completed the grievance process with respect to the December 10, 2014 incident and the alleged subsequent denial of medical care. Rather, plaintiff claims that he tried to file grievances, but no one ever responded to the grievances, and either defendants should be estopped from raising this defense, or the court should find that "special circumstances" exist to excuse plaintiff's failure to exhaust. (Dkt. No. 44). Plaintiff alleges that defendants "purposely impeded 'full access to the institutional grievance program.'" (Dkt. No. 44 ¶ 2).

Plaintiff claims that he mailed a grievance relating to the December 10 incident on December 11, 2014, and when he received no response, he mailed out another grievance on December 30, 2014. (Dkt. No. 44 at ¶¶ 4-11). Plaintiff states that, when he failed to receive a response to his December 30, 2014 grievance, he filed another grievance relating to the same issues on January 9, 2015. (Dkt. No. 44 at ¶ 9). Plaintiff has attached copies of the grievances that he claims he mailed. (Dkt. No. 44-1 at CM/ECF pp.1-6). In each case, plaintiff alleges that he gave the grievance to an

11

officer[6] and watched him put the documents in the mailbox. (Dkt. No. 44-1 at ¶ 4, 8, 9).

Plaintiff states that "recognizing that his complaints were not being accepted for filing . . . then wrote a letter to Director Karen Bellamy dated (1-15-15) and mailed it out on (1-16-15)." (Dkt. No. 44 at ¶ 10). Plaintiff then states that his cell was searched on January 16, 2015 and that "upon returning to the cell plaintiff realized the above cited & foregoing papers were still in his possession." (Dkt. No. 44 at ¶ 12). This statement by plaintiff is completely unclear. The court cannot tell which papers were "still" in plaintiff's possession. In any event, plaintiff does not state that he again mailed out any papers that were "still" in his possession.

Plaintiff states that no one responded to plaintiff's concerns, but that on **January 12, 2015**, "Bellamy finally issued a written response," but unfortunately, that response involved an "entirely separate matter," and "not any concerns about the aforementioned . . . AT ALL." (Dkt. No. 44 at ¶ 13). Plaintiff then states that he was "overwhelmingly perplexed and distraught" by Bellamy's "routine systematic responses." (Dkt. No. 44 at 14). However, the court notes that if plaintiff is correct, and Bellamy wrote to him on January 12, 2015, she had not seen plaintiff's letter regarding any problems that he was having with the grievance system, which he claims he wrote on **January 16, 2015.** Thus, plaintiff could not have been perplexed and distraught about Bellamy's failure to respond to the issues described in a letter that plaintiff had not written yet. (*Compare* Dkt. No. 44 at ¶ 10 *with* Dkt. No. 44 at ¶¶ 13-14). Plaintiff states that he "spoke

---

[6] The officers to whom the plaintiff gave the grievances for mailing are not alleged to have been involved in any of the conduct described in plaintiff's complaint.

12

candidly" to Bellamy in a letter, dated April 21, 2015, where he discussed the alleged failure to process his grievances. (Dkt. No. 44 at ¶ 14). As defendants argue, this April 2015 letter is not relevant to this case because it was written after he filed this federal complaint.

In further support of his estoppel argument, plaintiff attaches a series of letters that he has written to various individuals, claiming that his grievances are not being answered. (*See e.g.* Dkt. No. 44-1 at CM/ECF pp.8-16). He has also attached a letter that he wrote to "Mr. Annucci," calling him the Director of I.G. (Inspector General). The letter is dated December 17, 2014 (mailed on December 18, 2014). (Dkt. No. 44-1 at CM/ECF p. 7). In this letter, plaintiff states that he previously wrote to Mr. Annucci on November 30, 2014 to complain about defendant Velie. Plaintiff mentions an incident in July of 2014, and then states that defendant Velie threatened plaintiff on December 15, 2014. There was absolutely no mention of the December 10, 2014 incident or any resulting denial of medical care. Even if a letter to Annucci were sufficient for exhaustion – which it is not[7] – plaintiff never mentioned the incident in question in the letter.[8]

---

[7] *See Hall v. Bradley*, No. 12-CV-6202, 2015 WL 3964897, at *5 (W.D.N.Y. June 29, 2015) (neither letters to other DOCCS officials, nor conversations with prison officials about the incident satisfy the exhaustion requirment).

[8] The court also notes that in the complaint, plaintiff alleges that he met with former defendant Hoag regarding the disciplinary hearing on three different dates, all ***after*** plaintiff allegedly sent out grievances that were not answered. Plaintiff alleges that he told Hoag all about the incident and the denial of medical care. Hoag told plaintiff he could not help him with that    which is reasonable because Hoag was the hearing officer at plaintiff's disciplinary hearing    but that plaintiff should "file a grievance." (Compl. at 11). Plaintiff does not allege that he mentioned to Hoag that plaintiff had already filed grievances, but that they had gone unanswered.

The court has read all of plaintiff's letters and complaints about the failure of Upstate to process his grievances. However, even if the court accepts plaintiff's assertions that his grievances were not being processed, he has still failed to ***properly*** exhaust his administrative remedies with respect to the December 10, 2014 incident and the alleged denial of medical care. The courts in this circuit have held that the failure to receive a response from either the IGRP or the Superintendent does not excuse exhaustion. *Lopez v. Cipolini*, No. 14-CV-2442, __ F. Supp. 3d __, 2015 WL 5732076, at *7 (S.D.N.Y. Sept. 30, 2015) (citing *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015) ("Courts in [the Second Circuit] have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response constitutes a failure to exhaust administrative remedies.")). *See also Hall v. Bradley*, 2015 WL 3964897, at *3-4 (citing cases). The regulation regarding harassment grievance specifically provides that if the Superintendent does not respond within the appropriate time period, "the grievant may appeal his/her grievance to the CORC." 7 N.Y.C.R.R. § 701.8(g).

The court will assume for purposes of this recommendation, that the plaintiff tried to file the grievances that he claims he sent for processing. Plaintiff submits a "Request for Interview or Information" that he sent to the Superintendent on January 9, 2015. (Dkt. No. 44-1 at CM/ECF p.17). This document states that plaintiff was attaching his three grievances, "dated (12/11/14), (12/30/14) and (1/9/15) concerning [sic] incident of (12/10/14)." (*Id.*) Plaintiff states in this note that he mailed the complaints to the IGRC, but they went "unacknowledged." (*Id.*) Assuming that

14

plaintiff gave the IGRC sufficient time to respond, and that this note qualifies as an appeal to the superintendent, the regulations provide that the Superintendent has "twenty (20) calendar days from the time the appeal was received" to answer the grievance. 7 NYCRR § 701.5(c)(3)(i). If the Superintendent fails to respond within twenty days, then the inmate may appeal to the CORC. The CORC then has "thirty (30) calendar days from the time the appeal was received" to render its decision. 7 NYCRR § 701.5(d)(3)(ii).

Plaintiff filed this action on January 26, 2015, only seventeen (17) days after writing to the Superintendent. (Dkt. No. 1). Even assuming that plaintiff appealed properly to the Superintendent, he did not afford the Superintendent the twenty days that the regulations allow for a response. Even if the Superintendent had failed to respond, then plaintiff would have had to have appealed to the CORC and given the CORC another thirty days to process the appeal and make a decision. As defendants argue, plaintiff simply filed his federal complaint prematurely, before he could possibly have completed all of the steps necessary to exhaust his administrative remedies.

In his sur-reply, plaintiff appears to argue that, even if he did not exhaust his administrative remedies, there are "special circumstances" because he has filed grievances about "fully identical" issues in the past, and they have not been resolved in his favor so essentially, it would have been futile to file grievances about his current issues. (Dkt. No. 52 at ¶¶ 2-14). However, plaintiff did not originally allege that he failed to file a grievance because it would have been futile. He claims he filed grievances and was ignored.

15

In support of his argument, plaintiff cites *Johnson v. Killian*, 680 F.3d 234, 238-39 (2d Cir. 2012). In *Johnson*, the Second Circuit held that plaintiff had exhausted his administrative remedies when he filed, and exhausted, a grievance in 2005 challenging the facility's prayer polices. *Id.* at 236-237. After Johnson filed his grievance, the facility ceased enforcing the relevant policy. *Id.* at 237. In 2007, a new warden was appointed, and the challenged policy was reimplemented and consistently enforced. *Id.* Plaintiff filed a complaint without exhausting his administrative remedies regarding the reimplementation of the challenged policy. *Id.* The court held that plaintiff sufficiently complied with the exhaustion requirement by challenging the identical policy in 2005, notwithstanding a "different set of circumstances" in 2007. *Id.* at 238-39. The court held that "the issue that Johnson would have raised in 2007 – the inadequacy of the spaces and times allotted for congregational prayer – was *identical* to the issue he exhausted in 2007." *Id.* at 239.

White argues that because he has exhausted "identical" medical care issues in the past, and none of those "complaints resulted in a discontinuance of such," requiring him to exhaust his current medical care claim would be "redundant." (Dkt. No. 52 at ¶ 14). *Johnson* is distinguishable from this action. In *Johnson*, the plaintiff had already exhausted his remedies regarding the same policy, and the substantive issues would have been the same. This action involves a specific instance of alleged excessive force by defendant Velie and specific instances of the alleged denial of medical care which plaintiff did not exhaust. The fact that plaintiff has previously raised excessive force or medical care claims does not excuse him from exhausting all future claims based on

16

medical care or excessive force. This court finds that there are no special circumstances excusing plaintiff's failure to exhaust, and therefore, this action must be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL REMAINING DEFENDANTS FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 18, 2015

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge